**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Lee Dell Bradley, Appellant.

Appellate Case No. 2016-001519

Appeal From Berkeley County
Deadra L. Jefferson, Circuit Court Judge

Unpublished Opinion No. 2019-UP-195
Submitted March 5, 2019 – Filed May 29, 2019

**AFFIRMED**

Appellate Defender David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General W. Edgar Salter, III, and Senior Assistant Deputy Attorney General Melody Jane Brown, all of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, all for Respondent.

**PER CURIAM:** Lee Dell Bradley appeals his conviction of murder and sentence to life imprisonment. On appeal, Bradley argues the trial court erred in (1) admitting evidence of his prior conviction for domestic violence and (2) allowing an expert to testify a woman's risk of being murdered increases when she prepares to leave her domestic abuser. We affirm.

Bradley argues the trial court erred in admitting evidence of his 2012 conviction for domestic violence. Bradley asserts the conviction was inadmissible propensity evidence because the only logical inference the jury could draw from it was that because Bradley and Francis Lawrence (Victim) fought in the past, he must have murdered her. He also asserts the 2012 conviction was too remote because it occurred approximately two years before Victim's death.

In criminal cases, the appellate court sits solely to review errors of law. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "The trial [court] has considerable latitude in ruling on the admissibility of evidence and [its] decision should not be disturbed absent prejudicial abuse of discretion." *State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009). The appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial [court]'s ruling is supported by any evidence." *State v. Wilson*, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).

"As a threshold matter, the trial court must determine whether the proffered evidence is relevant as required under Rule 401, SCRE." *State v. Cope*, 405 S.C. 317, 337, 748 S.E.2d 194, 204 (2013). "To be admissible, the bad act must logically relate to the crime with which the defendant has been charged." *State v. Fletcher*, 379 S.C. 17, 23, 664 S.E.2d 480, 483 (2008). "If the trial court finds the evidence is relevant, it must then determine whether the bad act evidence fits within an exception in Rule 404(b)[, SCRE]." *Cope*, 405 S.C. at 337, 748 S.E.2d at 204. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show . . . the absence of mistake or accident . . . ." Rule 404(b), SCRE; *see also State v. Pagan*, 369 S.C. 201, 211, 631 S.E.2d 262, 267 (2006); *State v. Lyle*, 125 S.C. 406, 416, 118 S.E. 803, 807 (1923).

"[A] trial court does not necessarily err when it admits testimony about a bad act occurring many years before the crimes charged." *State v. Scott*, 405 S.C. 489, 504, 748 S.E.2d 236, 244 (Ct. App. 2013). "In view of [case law] and the language of Rule 404(b), courts have considered temporal remoteness in determining whether admission is proper, but there exists no set time limit beyond which a prior

bad act is simply, *per se*, too remote." *Id.* at 504, 748 S.E.1d at 244–45; *see State v. Tutton*, 354 S.C. 319, 332 n.5, 580 S.E.2d 186, 193 n.5 (Ct. App. 2003) ("Remoteness in time, however, is not dispositive."); *State v. Blanton*, 316 S.C. 31, 33, 446 S.E.2d 438, 440 (Ct. App. 1994) ("That the alleged acts perpetrated against the two witnesses occurred some seven to eight years prior to the alleged molestation of [the victim], is not alone dispositive.").

"Even if prior bad act evidence . . . falls within an exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Cope*, 405 S.C. at 337–38, 748 S.E.2d at 204–05; *see* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Unfair prejudice means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Alexander*, 303 S.C. 377, 382, 401 S.E.2d 146, 149 (1991) (quoting Fed. R. Evid. Rule 403 advisory committee's note to 1972 proposed rules). "The determination of the prejudicial effect of the evidence must be based on the entire record and the result will generally turn on the facts of each case." *Fletcher*, 379 S.C. at 24, 664 S.E.2d at 483. "A trial [court]'s decision regarding the comparative probative value and prejudicial effect of relevant evidence should be reversed only in exceptional circumstances." *State v. Sweat*, 362 S.C. 117, 129, 606 S.E.2d 508, 514 (Ct. App. 2004).

First, we find the trial court properly found Bradley's 2012 conviction relevant. *See Cope*, 405 S.C. at 337, 748 S.E.2d at 204 ("As a threshold matter, the trial court must determine whether the proffered evidence is relevant as required under Rule 401, SCRE."). Evidence of a prior bad act is relevant when it logically relates to the charge a defendant faces at trial. *See Fletcher*, 379 S.C. at 23, 664 S.E.2d at 483. The trial court found the 2012 incident showed the absence of a mistake and was logically relevant because it shed light on Victim's relationship with Bradley. We find no error in this analysis. Officer Stacey Cross testified the 2012 conviction arose when police responded to a domestic disturbance in Victim's home. As the trial court referenced, the 2012 incident was similar to the instant murder charge because it involved a domestic dispute between the same individuals in the same residence. *See* Rule 401, SCRE (providing evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Moreover, the State introduced Bradley's history of violence toward Victim specifically to rebut his defense that Victim

accidentally fell on the knife during their fight.  *See* Rule 404(b), SCRE (providing evidence of a prior bad act may be admissible to show the absence of a mistake or accident); *State v. Smith*, 337 S.C. 27, 33, 522 S.E.2d 598, 601 (1999) (finding a defendant's prior conviction for criminal domestic violence logically related to the murder charge because it showed defendant's intent and the absence of mistake); *Sweat*, 362 S.C. at 122–26, 606 S.E.2d at 511–13 (holding the trial court did not err in admitting evidence of a prior charge of domestic violence because the charge evidenced a motive or plan on part of the defendant).  We find the trial court did not err in concluding the conviction had some tendency to demonstrate Bradley's intent and the lack of accident.

Second, we find the trial court properly concluded Bradley's 2012 conviction was not too temporally remote.  South Carolina appellate courts have consistently expounded that remoteness goes to evidentiary weight as opposed to admissibility.  *See Scott*, 405 S.C. at 504, 748 S.E.2d at 244 ("[A] trial court does not necessarily err when it admits testimony about a bad act occurring many years before the crimes charged."); *id.* at 504, 748 S.E.2d at 244–45 ("In view of [case law] and the language of Rule 404(b), courts have considered temporal remoteness in determining whether admission is proper, but there exists no set time limit beyond which a prior bad act is simply, *per se*, too remote."); *Tutton*, 354 S.C. at 332 n.5, 580 S.E.2d at 193 n.5 ("Remoteness in time, however, is not dispositive.").  Our review of case law on this topic shows that trial courts do not abuse their discretion in admitting evidence of prior bad acts that occurred several years before the incidents leading up to a trial when the bad act evidence is otherwise admissible.  *See Blanton*, 316 S.C. at 33, 446 S.E.2d at, 440 ("That the alleged acts perpetrated against the two witnesses occurred some seven to eight years prior to the alleged molestation of [the victim], is not alone dispositive."); *State v. Key*, 277 S.C. 214, 215–16, 284 S.E.2d 781, 782 (1981) (holding evidence of armed threats defendant made eight years before robbing a convenience store were admissible).  Based on the foregoing, we find no abuse of discretion in the trial court's determination that Bradley's 2012 conviction was not too remote.

Third, we find the trial court properly found the probative value of Bradley's 2012 conviction was not substantially outweighed by its risk of unfair prejudice.  *See Cope*, 405 S.C. at 337–38, 748 S.E.2d at 204–05 ("Even if prior bad act evidence . . . falls within an exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant.").  As discussed above, we find no error in the trial court's determination that Bradley's 2012 conviction was both relevant to his instant charges and not overly remote.  Moreover, the trial court admitted the 2012 conviction to rebut Bradley's claim of

accident and specifically instructed the jury not to consider the conviction for any other purpose.  Thus, Bradley's arguments concerning unfair prejudice are unavailing.  *See Alexander*, 303 S.C. at 382, 401 S.E.2d at 149 (defining unfair prejudice as "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one").  Accordingly, the trial court's weighing of the evidence does not constitute an exceptional circumstance warranting reversal.  *See Sweat*, 362 S.C. at 129, 606 S.E.2d at 514 ("A trial [court]'s decision regarding the comparative probative value and prejudicial effect of relevant evidence should be reversed only in exceptional circumstances.").  We affirm the trial court's admission of Bradley's 2012 criminal domestic violence conviction.

Bradley also argues the trial court erred in admitting the expert testimony of Dr. Alyssa Rheingold that a woman's risk of being murdered increases in the time period when she prepares to leave her abuser.  Bradley contends the trial court erred in admitting Dr. Rheingold's testimony because it constituted propensity evidence and was analogous to inadmissible profiling testimony.

We find the trial court abused its discretion in allowing Dr. Rheingold to testify a woman's risk of murder increases when she prepares to leave her abuser.  *See Clasby*, 385 S.C. at 154, 682 S.E.2d at 895 ("The trial [court] has considerable latitude in ruling on the admissibility of evidence and [its] decision should not be disturbed absent prejudicial abuse of discretion.").  We acknowledge Dr. Rheingold was an independent witness unfamiliar with the specific facts of the case, and she did not implicitly vouch for the credibility of any other witness.  *See State v. Anderson*, 413 S.C. 212, 218–19, 776 S.E.2d 76, 79 (2015) (stating that to avoid vouching, the proper method for admitting expert testimony on the behavioral characteristics of sexual abuse victims is to call an independent expert).  However, Dr. Rheingold's testimony is distinguishable from that in *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013), and its progeny.  Notably, those cases involved allegations of child sexual abuse, and expert testimony was offered to explain the subsequent behavior of victims and their failure to report the abuse.  *See Kromah*, 401 S.C. at 358, 737 S.E.2d at 499; *see also State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 270-71 (2018); *Anderson*, 413 S.C. at 218–19, 776 S.E.2d at 79.  In contrast, Dr. Rheingold's testimony was offered to explain Bradley's behavior rather than Victim's.  Although Dr. Rheingold testified about why women remain in abusive relationships, the crux of her testimony was that women who prepare to leave abusive relationships face a heightened risk of murder at the hands of their abusers.  We find this constituted inadmissible

propensity evidence because it invited the jury to infer Bradley's guilt based on statistical probabilities rather than the evidence at trial.[1]

However, we find the trial court's error in admitting the testimony was harmless in light of the entire record.  "Whether an error is harmless depends on the circumstances of the particular case.  No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985).  When conducting a harmless error analysis, the appellate court looks to all the circumstances of the case to determine whether the improper evidence reasonably affected the result of trial.  *State v. Brewer*, 411 S.C. 401, 408–09, 768 S.E.2d 656, 660 (2015).

The totality of the witness testimony in this case meets this standard.  Specifically, Bradley admitted in his 911 call and subsequent police interview that he fought with Victim and she died during the course of the fight.  He also admitted he knew Victim died from a stab wound but did not call an ambulance or otherwise report her injuries to anyone.  Bradley also told multiple individuals that she was visiting a friend in Cross for a few days due to their relationship troubles.  Mary Jones, the only witness who lived in Cross, testified Victim had not been to her house since 2010.  Additionally, several of Victim's family members testified about Bradley's unusual behavior in the days following Victim's disappearance, including several instances when Bradley used Victim's vehicle and sold some of her personal property.  Further, Dr. Lee Tormos, the forensic pathologist, testified that based on the depth and angle of Victim's stab wound, it was unlikely that she accidentally fell on a knife.  Based on the totality of the evidence in this case, we find any error by the trial court in admitting Dr. Rheingold's testimony was harmless.  *See State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989) ("When guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached, the [c]ourt should not set aside a conviction because of insubstantial errors not affecting the result.").

Accordingly, Bradley's convictions are

---

[1] The State also contends Dr. Rheingold's testimony was admissible as a description of either Battered Spouse Syndrome or Munchhausen Syndrome by Proxy.  Although such testimony may be admissible, neither is applicable to the instant case.  Dr. Rheingold testified only about domestic violence and why women remain in abusive relationships; at no point during her testimony did she reference either syndrome the State suggests on appeal.

**AFFIRMED.**[2]

**HUFF, THOMAS, and KONDUROS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.